**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Ramon Garza, Jr., | : | |
| Petitioner/Defendant, | : | Civil Action No. 12-33-CG |
| v. | : | Criminal No. 7-349-CG-C |
| United States of America, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Petitioner Ramon Garza, Jr., a federal prison inmate proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 201) and a motion to extend the deadline for filing his memorandum in support (Doc. 202) on January 11, 2012; the Court received his memorandum in support (Doc. 211) on February 29, 2012.[1]  The United States filed its opposition (Doc. 219) on April 24, 2012, and Garza filed his reply (Doc. 222) on July 23, 2012.

This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  And it is **RECOMMENDED** that Garza's § 2255 motion be **DENIED** and that the Court find that Garza is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

---

[1]     As explained when taking the § 2255 petition under submission (*see* Doc. 214),

[t]he petitioner's motion was timely filed, and because the memorandum of law "concerns precisely the same claims as are set forth in the § 2255 Motion[,]" the issues raised in the memorandum of law "do not raise new grounds and, even if they did, obviously do relate back to the original, timely § 2255 Motion."  *United States v. Westry*, Civil Action No. 07-0425-WS; Criminal No. 05-0206-WS, 2007 WL 2051264, at *2 (S.D. Ala. July 16, 2007) (denying the Government's motion to strike untimely filed memorandum of law; relying on amended § 2255 petition "relation back" principles as provided in *Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000), and its progeny, and in *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).

(*Id.* at 1-2.)

# I.        The Underlying Criminal Case

A twenty-four (24) count superseding indictment (Doc. 10) was returned against Garza and two codefendants in April 2008.  The indictment contained one count of conspiracy to possess with the intent to distribute approximately 315 kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count 1); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 2); twenty (20) counts of substantive money laundering, in violation of 18 U.S.C. § 1956(a)(B)(i)[2]; one count of possession with intent to distribute 280 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1) (against Garza) (Count 23); and one forfeiture allegation (Count 24).  In June 2008, Garza was arrested and arraigned (*see* Docs. 15, 19, 33, and 36), and Jan Jones, a member of the Court's Criminal Justice Act (CJA) Panel, was appointed to represent Garza in this Court (*see* Docs. 34, 35, and 39).

In January 2009, following a five-day trial before Judge Granade, all defendants were convicted on all counts.  (*See* Docs. 89, 96, and 171 at 113-117 [905:12-909:21]) and were ordered to forfeit $6 million (*see* Docs. 92, 96, 109, and 171 at 134-136 [926:11-928:8]).  On April 22, 2009, after the Court denied his motion for a new trial (*see* Docs. 113, 134, 141, 142, 154, and 223), Garza received concurrent sentences of life imprisonment as to Count 1; 240 months as to Counts 2, 3, and 4; and 120 months as to Count 23.

Garza and his codefendants appealed to the Eleventh Circuit, arguing that there was insufficient evidence to support their convictions.  (*See generally* Doc. 189; *United States v. Lopez*, 403 Fed. App'x 362 (11th Cir. Nov. 12, 2010) (per curiam).)  Attorney

---

[2]        Garza was charged in two (Counts 3 and 4).

Greg Hughes was appointed to represent Garza post-trial.  (*See* Docs. 97, 101, and 103.)

And the Eleventh Circuit affirmed all three defendants' convictions and sentences.  *See*

*Lopez*, 403 Fed. App'x at 381.

## II.  <u>Collateral Attack</u>

Garza's petition presents claims based on the alleged ineffectiveness of his trial

counsel (Ms. Jones) and his appellate counsel (Mr. Hughes).  Ineffectiveness claims,

regardless whether asserted against trial or appellate counsel, "are governed by the

same standards applied . . . under *Strickland*."  *Dell v. United States*, 710 F.3d 1267, 1273

(11th Cir. 2013) (quoting *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009)).

To establish a claim of ineffective assistance of counsel, Garza is required to

show (1) that his attorney's representation fell below "an objective standard of

reasonableness" and (2) that a reasonable probability exists that but for counsel's

unprofessional conduct, the result of the proceeding would have been different.  *See*

*generally Strickland v. Washington*, 466 U.S. 668 (1984).  He "bears the burden of proof on

the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both

prongs must be proved to prevail."  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir.

2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002); *accord Cooper v. Secretary,*

*Dep't of Corrs.*, 646 F.3d 1328, 1351 (11th Cir. 2011).

To succeed on such a claim, Garza "must show that counsel's performance was

deficient.  This requires showing that counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Strickland*, 466 U.S. at 687.   And "[w]hen analyzing ineffective-assistance claims,

reviewing courts must indulge a strong presumption that counsel's conduct fell within

the wide range of reasonably professional assistance."  *Smith v. Singletary*, 170 F.3d 1051,

1053 (11th Cir. 1999) (citations omitted).  As the Supreme Court recently explained,

"[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S. Ct. 1473, 1485 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689–90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Id.* at 690.

*Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 788 (2011) (some internal citations modified or omitted).

When applying the *Strickland* standard, it is clear, moreover, that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

**A.      Ground One:     Ineffectiveness of trial counsel based on her "unreasonable failure to object to evidentiary errors that cumulatively denied Petitioner of Due Process."**

Garza first attacks his sentence by attacking the constitutional effectiveness of his trial counsel with regard to the testimony of three witnesses presented by the United States. The undersigned will address Garza's various theories witness-by-witness.

**1.      Agent Kroona**

**i.      Bolstering/Vouching**

As to FBI Special Agent Ruth Kroona, the case agent, Garza first asserts, "Case

Agent Kroona managed to violate prohibitions against both vouching and bolstering.

> Much of her testimony was prefaced with phrases, such as "I obtained information" or "We received information[" ] or "Our investigation has shown[,]" that clearly communicated to the jury her unfettered access to extrinsic sources of information.  The predicate statements employed to complete those phrases compounded the error by implying that she was able through those unidentified, extraneous sources to confirm her opinion of Garza's guilt.  Thus, the jurors were informed that her investigation showed Garza went to Alabama "to obtain the Tahoe to take it to New York to obtain cocaine" and that "Ramon Garza delivered 280 pounds of marijuana to the Knoxes in Alabama[.]"

(Doc. 211 at 27.)   According to Garza, the manner in which Agent Kroona testified "suggested both directly and indirectly to the jury that an experienced and highly trained FBI agent had determined that [he] was guilty of the charged crimes."  (*Id.*) Further, according to Garza, Agent Kroona was allowed to "blatantly vouch[ ] for the credibility of the principal witness, [unindicted co-conspirator] Alvin Knox, by informing the jury that she obtained information from [him] and corroborated it from police reports."  (*Id.* at 28.)

Claims of bolstering/vouching typically occur in the context of a prosecutor allegedly bolstering (or vouching for) the testimony of government witnesses, such as FBI agents, as was at issue in *United States v. Bernal-Benitez*, 594 F.3d 1303 (11th Cir.), *cert. denied*, 130 S. Ct. 2123 (2010), in which in Eleventh Circuit explained:

> A defendant is denied a fair trial if the prosecutor's remarks were (1) improper and (2) prejudicially affected the defendant's substantial rights. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different."  *Id.*  In assessing whether the remarks were prejudicial, "[a reviewing court] must evaluate them in the context of the trial as a whole and assess their probable impact on the jury."  *United States v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998).

> .                           .                        .

> Ordinarily, it is improper for a prosecutor to bolster a witness's testimony by vouching for that witness's credibility.  *United States v. Hands*, 184 F.3d

> 1322, 1334 (11th Cir. 1999). Bolstering occurs when "'the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.'" *United States v. Knowles*, 66 F.3d 1146, 1161 (11th Cir. 1995) (quoting *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983)). A prosecutor's comments can fail this test in two ways: (1) by placing the prestige of the government behind the witness, or (2) by indicating that information not before the jury supports the witness's credibility. *Id.* The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case. *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991).

*Id.* at 1313-14; *accord United States v. Arias–Izquierdo*, 449 F.3d 1168, 1177–78 (11th Cir. 2006); *see also United States v. Acosta*, 323 Fed. App'x 751, 760 (11th Cir. Apr. 16, 2009) (per curiam) ("Acosta first asserts that the prosecutor improperly bolstered the credibility of Maestrey by asking whether Maestrey struck the jury as the type of person who was telling the truth. This comment, however, did no more than invite the jury to make a credibility determination, which the district court subsequently instructed the jury to do.").

Garza has failed to provide the Court any authority to support his theory, which appears to be that FBI Special Agent Kroona—not the prosecutor—bolstered/vouched for the testimony of an ostensibly less credible witness, Alvin Knox. This is not surprising since it appears that, albeit in an unpublished opinion, the Eleventh Circuit has rejected this theory. *See United States v. Platten*, 448 Fed. App'x 873, 879 (11th Cir. Sept. 12, 2011) (per curiam) ("To the extent that [IRS Special Agent] McCord lent credence to [co-conspirator] Goldshor's testimony, there was no error, let alone plain error, because existing caselaw only prohibits the prosecutor from vouching for the credibility of witnesses, and does not forbid a witness from corroborating another's testimony. Further, in the same vein, any error stemming from the alleged vouching by McCord is not plain because Platten points to no precedent from this Court or the Supreme Court that supports his contention.") (citing *Arias–Izquierdo*, 449 F.3d at 1177–

78); *compare United States v. Torres*, 53 F.3d 1129, 1141 (10th Cir. 1995) ("While the line between corroborative testimony and testimony that constitutes impermissible credibility-bolstering may not always be clear, we believe the balance of Agent Hoke's testimony served a legitimate corroborative function."), *with cf. United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) ("[E]xpert testimony cannot be used **solely to bolster** the credibility of the government's fact-witnesses **by mirroring their version of events**.") (emphasis added).

Regardless, a review of Agent Kroona's testimony (*see* Doc. 170 at 119-226 [680:18-787:7]) reveals that she neither bolstered nor vouched for other witnesses. She testified regarding the mechanics of the investigation, and her testimony also "served a legitimate corroborative function." *Torres*, 53 F.3d at 1141. Thus, Garza cannot claim his trial counsel was constitutionally ineffective for failing to object to Agent Kroona's testimony as bolstering/vouching for other government witnesses. *See, e.g., Alba v. United States*, Nos. 09–CV–1789 W; 01–CR–3177 W, 2012 WL 460322, at *3 (S.D. Cal. Feb. 13, 2012) (where habeas petitioner asserted that his counsel was ineffective for not objecting to the corroboration of a witness's testimony by DEA Special Agent Coffey, the court noted, "Coffey was a highly trained DEA agent who observed video footage of Alba, Hernandez and Chavez going in and out of a clandestine lab carrying objects Coffey knew were consistent with an ongoing cook. Given these circumstances and the other evidence against Petitioner, counsel's strategic decision not to challenge Coffey's testimony was not objectively unreasonable."); *see also Ellis v. United States*, Nos. 6:06–cr–00037; 6:10–cv–00041, 2011 WL 7163114, at *4-5 (S.D. W. Va. Jan. 4, 2011) (rejecting argument that counsel was ineffective for failing "to object to prejudicial hearsay offered by case agent regarding interviews with key witnesses" because case agent simply "explained to the jury how ATF traces firearms and how the investigation was

conducted. . . . Agent Price did not repeat [witness's] testimony; he simply related the steps of the investigation.   There was nothing objectionable about his testimony."), *report & recommendation adopted*, 2012 WL 386738 (S.D. W. Va. Feb. 6, 2012), *appeal dismissed, United States v. Ellis*, No. 12–7599, 2013 WL 732769, at *1 (4th Cir. Feb. 28, 2013) (per curiam).

### ii.    Lay v. Expert Witness Testimony

Garza next asserts that Agent Kroona, in effect, offered expert testimony, asserting that, because her "[t]estimony [ ] function[ed] to answer the same question that the trier[s] of fact [are] to consider in [their] deliberations[, her testimony] constitute[d] impermissible lay opinion within the meaning of Fed. R. Evid. 701[.]" (Doc. 211 at 27.)   Relatedly, he also asserts that Agent Kroona was impermissibly allowed to testify "as an 'expert summary witness' [and] was allowed to casually disregard every safeguard against prejudicial summary witness testimony.  She alleged facts in her testimony as if they had already been proved; she repeatedly converted otherwise inadmissible references to police reports, witness interviews and other investigative documents into corroborative testimony[3]; and spiked her testimony with conclusory comments."   (*Id.* at 29-30; *see also id.* at 31 ("By [testifying] that the information obtained in the investigation corroborated statements of witnesses who accused the defendant," Agent Kroona, according to Garza, "obscured the important distinction between argument and evidence, in effect giving the jury a summation argument in the guise of testimony.").)

First, as stated above, and contrary to Garza's belief, an agent's testimony may "serve[ ] a legitimate corroborative function." *Torres*, 53 F.d at 1141.  Next,

---

[3]        This accusation also implicates the Confrontation Clause and hearsay; those concerns will be addressed below.

8

Rule 701 of the Federal Rules of Evidence permits opinion testimony by lay witnesses.  To qualify, a witness' opinion is limited "to those opinions and inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

*United States v. LeCroy*, 441 F.3d 914, 927 (11th Cir. 2006) (quoting FED. R. EVID. 701).

Importantly, "[j]ust because [a government agent's] position and experience could have qualified him for expert witness status does not mean that any testimony he gives at trial is considered 'expert testimony.'"  *Id.*; *see also United States v. Flores-De-Jesus*, 569 F.3d 8, 22 n.5 (1st Cir. 2009).[4]  If a government agent's testimony represents "his opinion about matters with which he had meaningful experience, [is] based on personal knowledge derived from his investigation . . . [, is] based upon facts that [are] readily apparent . . . , and his opinions [are] consistent with those that a normal person easily could form from reviewing the same information[,]" such testimony is "admissible as lay witness testimony under Fed. R. Evid. 701."  *United States v. Yager*, No. 08-40081, 2008 WL 4948608, at *1 (5th Cir. Nov. 20, 2008) (per curiam); *compare id.*, *with United States v. Rollins*, 544 F.3d 820, 832 (7th Cir. 2008) ("[DEA Case] Agent McGarry's impressions testimony was not based on any specialized knowledge gained from his law enforcement training and experience in narcotics trafficking generally.

---

[4]        There, the First Circuit noted,

While Agent Toro was qualified as an expert on the typical operation of drug conspiracies, *see United States v. Garcia-Morales*, 382 F.3d 12, 18-19 (1st Cir. 2004), we are not suggesting that only an expert could properly provide similar testimony.  *See, e.g., United States v. Santiago*, 560 F.3d 62, 66 (1st Cir. 2009) (observing that testimony about coded language in drug transactions may be admissible as either lay or expert testimony); *United States v. Pinillos-Prieto*, 419 F.3d 61, 71 (1st Cir. 2005) (holding that case agent's testimony regarding his experience with general operation of drug conspiracies was permissible lay opinion testimony under Rule 701).

*Id.* (initial internal citation modified).

Rather, his understanding of [certain] conversations came only as a result of the particular things he perceived from monitoring intercepted calls, observing drug transactions of these conspirators, and talking with the cooperating conspirators about this drug operation as the investigation rolled into the trial preparation phase. He had become intimately familiar with each voice on the calls, particular mannerisms of the speakers and the habits of the conspirators.").

A review of Agent Kroona's testimony reveals that her testimony was based on knowledge she gained as the case agent and not on her "law enforcement training and experience[.]" *Rollins*, 544 F.3d at 832. As such, her testimony was "admissible as lay witness testimony under Fed. R. Evid. 701." *Yager*, 2008 WL 4948608, at *1. And Garza's claim that his trial counsel was constitutionally ineffective because she failed to object to Agent Kroona's testimony as improper expert testimony (or that Agent Kroona was an impermissible "expert summary witness") must also be rejected. *Cf. Johnson v. United States*, Civil No. 08–00749–CV–W–GAF–P; Crim. No. 04–00276–01–CR–W–GAF, 2009 WL 3855723, at *3 (W.D. Mo. Nov. 18, 2009) ("Johnson has not provided any case law that suggests it is improper for a case agent to testify as an expert witness when he or she possesses the requisite knowledge. To the contrary, it is rather commonplace. Therefore, Johnson has not met his burden of proving ineffective assistance of counsel . . . ."); *Jordan v. United States*, Civil Action No. 7:06cv00381, 2007 WL 2693294, at *5 (W.D. Va. Sept. 13, 2007).[5]

---

[5]     There, the habeas petitioner argued that his

counsel should have objected because Investigator Wilson performed "dual roles" for the prosecution, "as case agent and expert witness." This essentially argues that a law enforcement officer active in a criminal case is limited at trial to testifying as a lay witness. In effect, [habeas petitioner] claims that Federal Rule of Evidence 702 (which states that **any witness** [emphasis added] may be "qualified as an expert by knowledge, skill, experience, training, or education,"

### iii.     Confrontation Clause and Hearsay

Finally as to Agent Kroona's testimony, Garza contends that her "testimony included *Crawford* and hearsay violations.  She readily admitted that some of her conclusions were derived from police reports and witness interviews, primary sources of testimonial hearsay."  (Doc. 211 at 36.)

> The Confrontation Clause of the Sixth Amendment prohibits the introduction of out-of-court statements that are "testimonial," unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  However, "the Confrontation Clause prohibits only statements that constitute impermissible hearsay."  *United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009).  The Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Id.* at 1286–87 (quotation omitted).  Thus, statements by out-of-court witnesses to law enforcement officials "may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement."  *Id.* at 1288 (quotation omitted).

*United States v. Churchwell*, 465 Fed. App'x 864, 865-66 (per curiam) (internal citation modified).[6]

Garza has failed to show which testimony given by Kroona violated *Crawford*, and he has not shown, moreover, that any of the police reports or witness interviews relied on by Agent Kroona were not "relevant to explain the course of [her] subsequent

---

and "may testify thereto in the form of an opinion") somehow excludes police officers.  The lack of merit to this argument is evidenced both by a plain reading of the rule and by innumerable cases in which police officers properly testified in an expert capacity.

*Id.* (collecting cases).

[6]     Moreover, at least the Tenth Circuit "ha[s] observed that 'not every statement made in response to [police] interrogation is testimonial' for purposes of confrontation clause analysis[.]"  *Gregor v. Franklin*, 466 Fed. App'x 709, 711 (10th Cir. Mar. 7, 2012) (§ 2254) (quoting *United States v. Smalls*, 605 F.3d 765, 779 (10th Cir. 2010)).  "[T]he emphasis must be on the responses generated."  *Id.* (citing *Davis v. Washington*, 547 U.S. 813, 822 n.1 (2006)).

investigative actions[.]"  *Id.* at 865; *see id.* at 865-66 ("The introduction of out-of-court statements by Government witnesses did not violate Churchwell's Confrontation Clause rights.  Although the district court did not make any evidentiary rulings on the statements or give a limiting instruction *sua sponte*, it appears the out-of-court statements were introduced for non-hearsay purposes—to explain how investigators got involved in the case and why they sought search warrants for Churchwell's storage unit and his current residence. The statements helped explain the course of the investigators' subsequent investigative actions, and were not plainly offered for the truth of the matter asserted.") (citing *Jiminez*, 564 F.3d at 1288).  Accordingly, Garza's trial counsel also was not constitutionally ineffective because she failed to object to Agent Kroona's testimony on Confrontation Clause grounds.  *Cf. Maxwell v. United States*, No. 1:06CV00029-ERW, 2007 WL 1847182, at *3 (E.D. Mo. June 25, 2007) ("Movant's argument that Mr. Cohen failed to object, on the basis of hearsay, to the statements by the two female witnesses, testified to by Detective Gary Pride, is without merit.  Detective Pride testified that the two female witnesses denied ownership of the firearm, and denied firing the firearm.  The trial transcript shows that Mr. Cohen did object on the grounds of hearsay to the statements made by the two female witnesses. [However, t]he statements of the two female witnesses were not testimonial.  The two unidentified women were not accusers of movant.  Additionally, their statements were not hearsay. They were offered to show what the officers did in their investigation, not for the truth of the matter asserted. . . . Therefore, Movant's first basis for his ineffective assistance claim is refuted by the record.") (citing *Crawford*, 541 U.S. at 51).

### 2.    Agent Lopez

ICE Agent Julio C. Lopez was called by the Government to testify regarding an investigation into a load of marijuana negotiated by Garza in Texas in 2007 that was

ultimately seized.  (*See generally* Doc. 168 at 179-192 [492:24-505:19].)  An unidentified confidential informant tipped Agent Lopez off to Garza's involvement (*See id.* at 181 [494:7-14] ("On August 30th of 2007, one of my informants called me and indicated that an individual by the name of Ramon Garza, Jr., was looking to transport -- looking for somebody to transport a load of narcotics from McAllen, Texas, to Houston.  Q.  And as a result of that information, did you initiate an investigation?  A.   Yes, ma'am.  A face-to-face meeting between Mr. Garza and my informant was set up for September 1st of 2007.").)

### i. Trial Counsel Attempted, Unsuccessfully, to Exclude Agent Lopez's Testimony

Garza's trial counsel vigorously contested the admission of this testimony.  But, contrary to reality, Garza asserts, "Agent Lopez's testimony reveals so many comments and assertions directly and indirectly attributable to the non-testifying informant that the ***failure of trial and/or appellate counsel to recognize it as an issue*** should constitute per se deficient performance under the first Strickland prong."  (Doc. 211 at 35 (emphasis added).)

After the Government filed a notice of intention to offer Rule 404(b) evidence (Doc. 58), identifying Garza's scheme in Texas to deliver a large quantity of marijuana (*see id.*, ¶ 1), trial counsel—evidently recognizing that Agent Lopez was "an issue" for Garza's defense—filed a motion *in limine* to exclude this evidence (Doc. 62).  And after the Court denied the motion (Doc. 68), allowing admission of the evidence, trial counsel requested and received a limiting instruction.  (*See* Doc. 211 at 113-115 [426:9-428:17], 197-198 [510:20-511:16].)  The record therefore belies Garza's complaints concerning his trial counsel's performance with respect to this witness.

### ii.      Confrontation Clause and Hearsay

With regard to Agent Lopez's testimony, trial counsel's actions clearly demonstrate her performance was not constitutionally ineffective; however, it should be noted that the use of a confidential informant's out-of-court statements does not necessarily implicate *Crawford*.   For example, here, Agent Lopez testified that the confidential informant's identification of Garza merely set in motion the investigation. (*See* Doc. 168 at 181 [494:7-14].)   Similarly, in *United States v. Gaines*, 358 Fed. App'x 34 (10th Cir. Dec. 22, 2009), the Tenth Circuit affirmed the trial court's conclusion that,

> [u]nlike the facts in *Crawford*, the officers in [that] case used the name provided by the confidential informant solely to obtain further information about the defendant, including a known photograph of the defendant.   Thereafter, the agents were able to identify the defendant based upon their personal observations of the defendant during the drug transaction.
>
> *United States v. Gaines*, Nos. 05–CR–132–JHP; 08–CV–699–JHP, 2009 WL 1457713, at *4 (N.D. Okla. May 22, 2009).   The court concluded that "the information obtained by the government agents was used solely to facilitate their investigation into the identity of Petitioner as opposed to supplying 'testimonial' evidence at trial against Petitioner. . . ."   *Id.* at *5. We agree.   The CI's identification of Mr. Gaines's voice in the January 5 phone call was not admitted at trial to prove the truth of that identification but only to establish the background for Agent Rosebrough's ultimate identification of Mr. Gaines as the participant in the January 9 drug sale for which he was convicted. As such, admission of the CI's identification of Mr. Gaines constituted neither a *Crawford* nor a Confrontation Clause violation.

*Id.* at 37 (internal citation modified); *compare id., with, e.g.,* Doc. 169 at 181-185 [494:7-498:21] (like in *Gaines*, the confidential informant's identification of Garza was not admitted at trial to prove the truth of the matter asserted but to provide background for how Agent Lopez's investigation of Garza began; Agent Lopez ultimately identified Garza from his own surveillance).

And, accordingly, like in *Gaines*, once it is determined that a confidential informant's identification of the defendant is non-testimonial, "it follows that neither

trial nor appellate counsel were deficient for neglecting to raise *Crawford*."   358 Fed.

App'x at 37.

### 3.   Officer Torres

Edgardo Torres, a former New York City police officer, testified regarding a 2002

incident that lead to the arrest of Garza and Codefendant Arcely Lopez.   While this

testimony will be discussed more fully below, Garza has asserted that, like Agent

Kroona, Officer Torres's testimony impermissibly vouched for/bolstered the testimony

of Alvin Knox.   (*See* Doc. 211 at 38-39.)   This argument is due to be rejected for the same

reasons given above, as to Agent Kroona.   *See supra*, § II.A.1.i.

### B.   Ground Two:   Ineffectiveness of trial counsel based on her "failure to exclude evidence and testimony derived from an illegal search and seizure."

Garza's second attack as to the constitutional effectiveness of his trial counsel is

centered on her alleged failure to exclude evidence that had previously been

suppressed by a New York state court—

> Defense Counsel's laxity enabled the prosecution to introduce inculpatory
> evidence obtained as a result of an illegal search and seizure in New York
> City.   The evidence was a direct and vital link connecting Garza to
> distribution of the narcotics charged in Count One of the indictment, and
> had a substantial adverse impact on the defense.   Yet counsel, though
> aware of a prior state court ruling suppressing the evidence, inexplicably
> did nothing to oppose testimony derived from the illegal seizure.   She
> made no pre-trial motion to exclude testimony as violative of the Fourth
> Amendment.   She did not use the state hearing to impeach Officer Torres.
> Nor did she object to impermissible statements by Officer Torres or Agent
> Kroona regarding the state case.

(Doc. 211 at 39.)

"[T]he failure to file a suppression motion does not constitute per se ineffective

assistance of counsel."   *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).   But counsel's

failure "to file a motion to suppress that is based on a lack of knowledge of the state of

the evidence due to counsel's misunderstanding or ignorance of the law or failure to

conduct adequate investigations can satisfy *Strickland*'s deficiency prong."   *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010) (§ 2254) (citing *Kimmelman*, 477 U.S. at 383-87).[7]

Of course, even if *Strickland* deficiency is proven, "to establish prejudice, a defendant must prove 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"   *Id.* (quoting *Strickland*, 466 U.S. at 694); *see, e.g., Emanuel v. United States*, Nos. 6:12–cv–1482–Orl–31GJK; 6:09–cr–223–Orl–31GJK, 2013 WL 935767, at \*4 (M.D. Fla. Mar. 11, 2013) ("To show actual prejudice in this context, Petitioner must show a meritorious Fourth Amendment violation and 'that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'") (quoting *Kimmelman*, 477 U.S. at 375).

### 1.    Background

On April 14, 2002, a business owner flagged down New York City police officers on patrol in the south Bronx to alert them that someone was across the street from his business with a gun.   The officers entered the business, observed the silhouette of three men standing over two people on the ground, drew their weapons, and yelled for

---

[7]       "The decision not to suppress evidence[, moreover, can be] a strategic choice." *Williams v. Smith*, No. 5:06-cv-171, 2010 WL 565130, at \*9 (W.D. Mich. Feb. 10, 2010) (citing *Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008)).   And "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Rockwell*, 559 F. Supp. 2d at 834 (quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)).   Furthermore, "[a] particular strategy need not be one most lawyers would adopt, 'but it must be within the range of logical choices an ordinarily competent attorney . . . would assess as reasonable to achieve a specific goal.'"   *Id.* at 834-35 (quoting *Cone v. Bell*, 243 F.3d 961, 978 (6th Cir. 2001)); *see, e.g., Ball v. United States*, 271 Fed. App'x 880, 885 (11th Cir. Mar. 28, 2008) (per curiam) ("Under the circumstances, competent counsel could have concluded that, rather than telegraph his impeachment strategy as to Styron[, a bank robbery identification witness,] in a possibly unsuccessful motion to suppress, he would save it in hopes that his cross-examination would be more effective.   Thus, we cannot say no reasonable attorney would have opted to risk Styron identifying Ball in court and then used the damaging information challenging the reliability of her identification to discredit her.   We certainly cannot say that trial counsel's choice in Ball's case caused the adversarial testing process not to work, which is our ultimate concern.").

everyone to stop.  The three men standing ran, but the officers were able to apprehend one.  The two people on the ground were Garza and Aracely Lopez, who informed the officers that they were there to pick up a 1997 Chevrolet Tahoe and were about to be robbed by the men.  Garza and Lopez were taken to the police precinct and then to the hospital to have their injuries examined, and, once there, they slipped away from the police.

The robbery suspect who failed to escape informed the police that they were there to rob Garza and Lopez because the Tahoe contained narcotics.  The police then convinced the owner of the garage where the Tahoe was located to contact Garza.  And when Garza arrived to retrieve the Tahoe, the police were waiting for him and stopped him before he could exit the garage in the Tahoe.  Garza gave them consent to search the Tahoe, and the police observed, "the only telltale sign that appeared not normal . . . was that the rear window to the Tahoe would not go down."  Garza and Lopez were taken into custody and brought to the police precinct.  The police eventually discovered 11 kilograms of cocaine hidden in a hollowed out compartment, which made the rear window inoperable.  Garza provided a statement to the police in which he indicated that he was from Texas and in New York for a drug run.[8]

## 2.      Reach of the New York Suppression Order

Exhibit A to Garza's memorandum in support of his petition is a November 12, 2003 decision and order from the Supreme Court of the State of New York, County of The Bronx, in *The People of New York v. Ramon Garza*, Indictment No. 3532/02 (Doc. 211 at 51-59.)  That decision concludes:

This decision was not an easy one to arrive at due to the large quantity of

---

[8]      The source of this information is the testimony of Officer Torres.  (*See* Doc. 168 at 145-155 [214:19-224:17].)

> narcotics involved. In the Court's opinion, the defendant is involved in the trafficking of narcotics, however, the Court is compelled to sustain the motion to suppress the drugs and the statements as the defendant was arrested without probable cause and everything that follows an invalid arrest must be suppressed.

(*Id.* at 58-59.)

The undersigned initially notes that Garza is mistaken regarding the significance of this suppression order to his trial in this Court. Garza contends that, because the New York court found that the warrantless search and seizure in question was not justified by a recognized exception, "the evidence seized and all testimony derived therefrom were subject to suppression in the Alabama trial." (Doc. 211 at 41.) That conclusion, however, is not a given.

In *Douglas v. United States*, Nos. 2:05-CR-07; 2:06-CV-236, 2009 WL 2043882 (E.D. Tenn. July 2, 2009), the habeas petitioner's ineffectiveness claim was "that his trial counsel failed to inform him of, and failed to file, a meritorious motion to suppress what he claims was 'illegally seized evidence.'" *Id.* at *5. The petitioner there, like Garza,

> essentially assert[ed] that there can be "no doubt" of the merit of his claim for suppression because "[a] state court had ordered the evidence suppressed," and the evidence thus would have been inadmissible in federal court, relying on the Supreme Court's decision in *Elkins v. United States*, 364 U.S. 206 (1960) as authority to support his argument.

*Id.* (citation modified).

As pointed out by the court in *Douglas*, *Elkins* does not stand for the proposition that a federal court is bound by the suppression decision of a state court. Instead, in rejecting the "silver platter" doctrine, the Supreme Court, in *Elkins*, held

> that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. ***In determining whether there has been an***

18

> *unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how such inquiry may have turned out.* The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

364 U.S. at 223-24 (emphasis added); *compare id., with Douglas*, 2009 WL 2043882, at *6 ("It is clear, therefore, that petitioner's argument that evidence seized by state officers on May 10, 2002, was automatically to be excluded in this federal prosecution cannot be supported by *Elkins*. If a motion to suppress the evidence seized had been filed in his federal prosecution, the federal court would have made an independent inquiry without regard to the holding of the state court on the issue, even if the seizure of the evidence violated state law.").

Thus, to show that his trial counsel was constitutionally ineffective for not moving to suppress the evidence the New York state court previously suppressed and that he was prejudiced by this, Garza must show that this Court would have reached the same conclusion as the New York state court and suppressed the evidence. *See id.* ("Although Douglas argues no basis for suppression of the evidence seized from his person on May 10, 2002, except for his erroneous contention that suppression by the state court required suppression in the federal court, the Court nevertheless needs to consider the question: 'Did Douglas have a meritorious basis for a suppression of the evidence seized?' The question must necessarily be considered before the court considers whether counsel's advice to Douglas to give up the right to file pretrial motions as part of a plea agreement to avoid the mandatory term of life imprisonment was constitutionally lacking.").

### 3. Impact of Not Moving to Suppress Here

Here, however, the undersigned need not conduct an independent inquiry into

the suppression issue because, had trial counsel moved to suppress the same evidence suppressed by the New York state court, and assuming this Court would have granted the suppression motion and Garza could have kept out the testimony of Officer Torres, the same information was (and would have been) admitted through the testimony of Garza's co-conspirator Alvin Knox pursuant to Fed. R. Evid. 801(d)(2)(E).[9]   Garza, himself, provided Knox with the specifics concerning Garza's arrest in New York.  (*See* Doc. 168 at 187-192 [256:13-261:4], 212 [281:16-20], 213 [282:1-16].)[10]   And Agent Kroona's testimony concerning the New York incident was based on—and merely

---

[9]      "Generally, hearsay evidence is inadmissible.  FED. R. EVID. 802.  But an out-of-court statement offered against an opposing party that 'was made by the party's coconspirator during and in furtherance of the conspiracy' is not hearsay.  *United States v. Castillo-Gamez*, 466 Fed. App'x 859, 864 (11th Cir. Apr. 24, 2012) (per curiam) (quoting FED. R. EVID. 801(d)(2)(E)); *see id.* at 862 ("Velasquez–Santizo[, who pleaded guilty to conspiracy and testified for the United States,] testified that Marcelino asked him to transport illegal aliens and that he had hired a man named Norberto to drive the van.  Castillo–Gamez objected to Velasquez–Santizo's testimony on hearsay grounds, but the court admitted the statement as a co-conspirator's statement under Federal Rule of Evidence 801(d)(2)(E).").

[10]     Alvin Knox's testimony, for example, included the following:

Q.  And what did Sonny [Garza's nickname] tell you?

A.  That the -- that they had -- someone had tried to rob them and that the robbery had went bad and the police ended up coming and the guys were arrested and taken to the police station and once the guys were at the police station, that they revealed that they were trying to rob them, because he had said there were drugs in there.  And at that time the police came back and the vehicle was -- Sonny was arrested and Mrs. Aracely and the vehicle was taken into custody, searched.

Q.  Did Sonny tell you anything about the amount of cocaine that was recovered from the vehicle?

A.  That all of the cocaine was not discovered.

Q.  So some of it remained hidden in the Tahoe?

A.  Yes, ma'am.

Q.  Do you know whatever happened to the Tahoe?

A.  No, ma'am.

(Doc. 168 at 212 [281:16-20], 213 [282:1-16].)

offered to corroborate—the testimony of Knox.

Therefore, had trial counsel successfully moved to suppress the same evidence suppressed by the New York state court, Garza still cannot make the requisite *Strickland* showing that the result of the underlying proceeding would have been different in light of what he said to Alvin Knox.  Accordingly, the undersigned cannot say that, even assuming trial counsel was deficient for not moving to suppress, *but see Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take futile action can never be deficient performance[.]"), Garza was prejudiced by counsel's deficiency.  *See, e.g., Premo v. Moore*, --- U.S. ----, 131 S. Ct. 733, 740-41 (2011) (§ 2254) ("Counsel gave this explanation for his decision to discuss the plea bargain without first challenging Moore's confession to the police: that suppression would serve little purpose in light of Moore's other full and admissible confession, to which both his brother and his accomplice's girlfriend could testify.  The state court would not have been unreasonable to accept this explanation. . . . [This] explanation—that suppression would have been futile—confirms that his representation was adequate under *Strickland*, or at least that it would have been reasonable for the state court to reach that conclusion."); *Houston v. Foltz*, 850 F.2d 692, 1988 WL 71195, at *2 (6th Cir. July 11, 1988) (table) (§ 2254) ("Petitioner's ineffective assistance of counsel argument relates solely to the contention that his trial counsel should have moved to suppress evidence of Houston's previous extensive criminal record prior to advising him not to testify.  Although it appears that if such a motion had been made one of the prior convictions might have been suppressed, the others would have been admissible.  The Supreme Court's decision in *Strickland* . . . makes it clear that this is the kind of strategy decision by counsel that should not be second guessed by appellate courts. . . ."); *cf. United States v. McDonald*, 61 F.3d 248, 254 (4th Cir. 1995) ("Because there is an independent basis for admitting the other evidence, we need

not address whether the initial search of Apartment 11 falls within the exigent circumstances or hot pursuit exceptions to the Fourth Amendment's warrant requirement."), *overruled on other grounds by United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000) (en banc).

### C. Ground Three:  Ineffectiveness of appellate counsel based on his failure to raise Ground One and Ground Two, above, on direct appeal.

Garza's final ground—that he was prejudiced by his appellate counsel's failure to raise on direct appeal the "plain errors described in grounds one and two" (Doc. 211 at 43) above—also fails.

> The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Id.* at 751-52.  Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues.  *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).

*Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009); *see also Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) ("A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court.") (citing *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989)).  "Counsel's performance will be deemed prejudicial if [a court] find[s] that 'the neglected claim would have [had] a reasonable probability of success on appeal.'"  *Philmore*, 575 F.3d at 1265 (quoting *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991)).

Here, Garza's appellate counsel ably represented him before the Eleventh Circuit, and the result was a lengthy decision, albeit one affirming the convictions. Further, as discussed fully above, Garza has not demonstrated that the claims he asserts

in his § 2255 petition—the "neglected claims" had any reasonable probability of success on direct appeal.[11]

### D.     Certificate of Appealability.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied.  28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his

---

[11]     Garza's opening brief includes a separately numbered section (VIII) that appears to assert a separate claim for cumulative error.  (*See, e.g.*, Doc. 211 at 47 ("The cumulative error doctrine recognizes that an aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial, which calls for reversal") (citation omitted).)  But cumulative error is not a ground listed in his habeas petition.

The petition was timely filed, but the memorandum was not.  (*See generally* Doc. 214). The Court nevertheless accepted the memorandum because, at least initially, it appeared it "'concern[ed] precisely the same claims as are set forth in the § 2255 Motion[,]' the issues raised in the memorandum of law 'do not raise new grounds and, even if they did, obviously do relate back to the original, timely § 2255 Motion.'  (*Id.* at 1-2 (citation omitted).)  For the sake of argument, the undersigned will address the cumulative error allegation, assuming it at least "relates back" to the timely § 2255 petition.

Any claim for cumulative error can be quickly dispatched here.  Having found, above, that Garza has failed to state meritorious ineffectiveness claims, any "claim of cumulative error must also fail."  *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail."); *see also Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (§ 2254) ("Miller further argues that the 'cumulative effect of numerous errors of counsel rendered counsel's performance inadequate.' As set forth above, Miller has not demonstrated error by trial counsel; thus, by definition, Miller has not demonstrated that cumulative error of counsel deprived him of a fair trial.  *See Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate")); *Johnston v. Tucker*, No. 3:10cv538/LAC/MD, 2011 WL 5008355 (N.D. Fla. Sept. 16, 2011) (§ 2254) ("Mr. Johnston raised his cumulative error argument in his motion for post-conviction relief.  The state court correctly concluded that the individual claims did not show ineffective assistance of counsel; therefore, there is no error upon which to base a cumulative error claim . . . .  *See Parker v. State of Florida*, 904 So.2d 370, 380 (2005) ("where the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails")), *report & recommendation adopted*, 2011 WL 5008364 (N.D. Fla. Oct. 20, 2011).

habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

The petitioner is not entitled to a certificate of appealability on his ineffective-assistance-of-counsel claims. When, as is the case here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack*, 529 U.S. at 484; *see also id.* at 483–84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"). With respect to the petitioner's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issue presented is adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability as to this claim.

For the reasons stated above, the petitioner is also not entitled to a certificate of appealability on any (possible) cumulative error claim. *E.g.*, *United States v. Hall*, 455 F.3d 508, 520-21 (5th Cir. 2006) ("Hall also claims that he is entitled to a COA on his ineffective assistance of counsel claim because of the cumulative effect of the various errors he alleges. Our clear precedent indicates that ineffective assistance of counsel

cannot be created from the accumulation of acceptable decisions and actions. Accordingly, no reasonable jurist could debate the district court's conclusion that the cumulative effect of the alleged errors did not constitute ineffective assistance of counsel, and Hall is not entitled to a COA on this issue.") (internal citations omitted).

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g., Brightwell v. Patterson*, No. CA 11–0165–WS–C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011) (the Eleventh Circuit (Hull, J.) subsequently denied the petitioner's motion for certificate of appealability on October 11, 2011 (*see* Doc. 14 in CA 11–0165–WS–C)); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## III.    Conclusion

Because the Magistrate Judge is of the opinion that (1) as to the ineffective-assistance-of-counsel claims, Garza has not shown that his rights were violated; and (2) any claim of cumulative error similarly fails, it is **RECOMMENDED** that the motion be **DENIED**.  The Magistrate Judge **FURTHER RECOMMENDS** that the Court find that the petitioner is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

## IV.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything

in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 10th day of June, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**